UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CRIMINAL MINUTES – GENERAL

Case No.     LA CR13-00611 JAK                                   Dated:  March 24, 2014

Title:       U.S.A. v. Pedro Rizo Vera

Present:     The Honorable John A. Kronstadt, United States District Judge

Interpreter: N/A

| Andrea Keifer | Not Reported | Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter* | *Assistant U.S. Attorney* |

| U.S.A v. Defendant(s) | *Present* | Cust. | Bond | Attorney(s) for Defendant | *Present* | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Pedro Rizo Vera | Not | X | | Lara K. Hoffman, DFPD | Not | X | |

**Proceedings:**     **DEFENDANT'S MOTION TO DISMISS THE INFORMATION (DKT. 24)**

### I.     Introduction

On August 28, 2013, Pedro Rizo Vera ("Defendant") was charged with illegally reentering the United States following deportation, in violation of 8 U.S.C. § 1326. Dkt. 10. On February 20, 2013, Defendant filed a Motion to Dismiss (the "Motion"). Dkt. 24. Defendant contends that his prior deportation was invalid because an Immigration Judge improperly informed him that he was not eligible for relief from deportation through a voluntary departure. *Id.* at 3. Based on the contention that the prior deportation was invalid, Defendant argues that it cannot serve as the basis for a violation of 8 U.S.C. § 1326. *Id.*

A hearing on the Motion was conducted on March 6, 2014. Dkt. 28. The Court ordered the parties to submit supplemental briefing, which each side filed on March 10, 2014. Dkts. 29, 30. For the reasons set forth in this Order, the Motion is DENIED.

### II.    Factual Background

#### A.    2004-2007: Defendant's Conviction, Sentence, and Deportation Order

On November 2, 2004, Defendant pleaded *nolo contendere* to Count One of a Felony Complaint that charged him with a violation of Cal. Health & Safety Code § 11379(a). Dkt. 24, at 4. He was placed on probation. *Id.* On June 21, 2006, he was sentenced to two years imprisonment for violation of probation. *Id.* Upon his release from custody on May 18, 2007, Immigration and Customs Enforcement ("ICE") issued a Notice to Appear, charging Defendant with removability under the Immigration and Nationality Act ("INA") on two grounds: (i) he was present in the United States "without being admitted or paroled"; and (ii) he had "been convicted of . . . [a] law

or regulation of . . . the United States . . . relating to a controlled substance (as defined in Section 102 of the Controlled Substances Act (21 U.S.C. § 802))." Dkt. 24, Exh. A, at 3. On May 29, 2007, Defendant appeared before an Immigration Judge. Dkt. 24, Exh. F. At that hearing, the judge stated, "I don't know whether or not this is going to be considered an aggravated felony drug crime . . . if it is . . . and you were to come back . . . illegally, you could be prosecuted for unlawful re-entry after deportation." *Id.* at 5. Although the judge did not determine whether Defendant had been convicted of an aggravated felony, she stated that she had "no choice" but to deport him:

> If you were a legal resident . . . you might have been able to . . . get [past] an aggravated felony drug crime for transportation if it was a very small amount. The problem is that you have no legal status. The drug crime disqualifies you from applying for cancellation under the non permanent resident status because if you have a drug crime, you can't qualify. . . . even if it's not a[n] illicit trafficking . . . so you could be transporting a very small amount of methamphetamine for your own personal use and that's not going to be a drug trafficking crime . . . [but] that is still a conviction for a crime relating to a controlled substance . . . Yeah. So Mr. Rizo, you have nothing available to you . . . with this kind of crime.

*Id.* at 4. Following these statements, the judge ordered that Defendant be deported from the United States. Dkt. 24, Exh. G.

### B. 2010 Conviction and 2011 Deportation

After being deported, Defendant returned to the United States. Dkt. 24, at 5. On July 6, 2010, while present here, Defendant was convicted of possession for sale of a controlled substance in violation of Cal. Health & Safety Code § 11351. Dkt. 26, Exh. B. Defendant was sentenced to two years imprisonment. *Id.* After completing his prison term, on June 13, 2011, the prior removal order was reinstated. Dkt. 24, Exh. H. The "Reinstatement Order" advised Defendant that he had no right to a hearing before an Immigration Judge. *Id.*

### C. 2013 Information

After being deported a second time, Defendant again returned to the United States. On August 28, 2013, he was charged by an Information with illegal reentry into the United States following deportation in violation of 8 U.S.C. § 1326. Dkt. 10. The Information alleges that "[a]t least one of defendant's previously alleged deportations and removals from the United States occurred subsequent to defendant's conviction for the following aggravated felony: Possession for Sale of a Controlled Substance, to wit, heroin, in violation of California Penal Code Section 11351 . . . a drug trafficking offense for which the sentence imposed exceeded thirteen months." *Id.* at 2.

## III.  Analysis

### A. Legal Standard

"[A]ny alien who . . . has been . . . deported, or removed . . . and thereafter . . . enters, attempts to enter, or is at any time found in, the United States" absent express consent "shall be fined

under Title 18, or imprisoned not more than 2 years, or both." 8 U.S.C. § 1326(a).[1] An alien charged under 8 U.S.C. § 1326 may "challenge the validity of the deportation order" by showing: (i) "the alien exhausted any administrative remedies that may have been available to seek relief against the order"; (ii) "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review"; and (iii) "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d).

### B.  Application

Defendant contends that the Information should be dismissed pursuant to 8 U.S.C. § 1326(d) because the 2007 deportation order on which the Information is predicated was fundamentally unfair. Dkt. 24 at 22. Defendant contends that the Immigration Judge failed to inform him that he was eligible for relief from deportation in the form of voluntary departure. *Id.* Defendant contends that he was eligible for voluntary departure because the conviction that led to his deportation was not an "aggravated felony" as defined by the INA. *Id.*

Defendant concedes that, if his 2004 conviction under Cal. Health & Safety Code § 11379(a) constituted an aggravated felony, then he would have been prohibited from voluntary departure. *Id.* at 22. Defendant further concedes that, if he were prohibited from voluntary departure, then the immigration judge would not have erred in failing to inform him of his right to seek voluntary departure, and the deportation order issued in 2007 and reinstated in 2011 would have been valid. *Id.*; *see* 8 U.S.C. § 1229c(a)(1).[2]

The Government concedes that, if Defendant's 2004 conviction did not constitute an aggravated felony, he would have had a plausible claim that he qualified for voluntary departure. Dkt. 26, at 21. The Government further concedes that, if Defendant had a plausible claim for voluntary departure, the failure of the Immigration Judge to inform him of his right to pursue that relief would have invalidated the deportation order. *Id.* Thus, the primary dispute between the parties is whether the 2004 conviction constituted an aggravated felony.

#### 1.  The Legal Framework Under *Descamps*

On November 2, 2004, Defendant pleaded *nolo contendere* to a violation of Cal. Health & Safety Code § 11379(a). That statute provides that,

---

[1] 8 U.S.C. § 1326(b)(2) provides that, for an alien "whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such title, imprisoned not more than 20 years, or both."

[2] Voluntary departure is a form of discretionary relief for aliens in removal proceedings. It allows a person to elect to leave the United States, rather than to leave under a removal order. In this case, Defendant was allegedly eligible for "fast track" voluntary departure, which can be granted at any time prior to the completion of a removal hearing. 8 U.S.C. § 1229c(a). "Fast track" voluntary departure is not available to aliens convicted of aggravated felonies. 8 U.S.C. § 1229c(a)(1). An alien who is eligible for voluntary departure is not entitled to it; the decision whether to grant voluntary departure is left to the discretion of an Immigration Judge or officer with U.S. Immigration and Customs Enforcement. *Id.* Voluntary departure is generally considered to be a desirable alternative to an order of removal, in part because it allows an alien to depart the United States and then immediately reapply for admission. In contrast, following a deportation under an order of removal, a person may be barred from seeking re-admission at all, or for a period of several years. 8 U.S.C. § 1229c(a)(2); 8 U.S.C. § 1182(a)(9)(A).

> . . . every person who transports, imports into this state, sells,
> furnishes, administers, or gives away, or offers to transport, import
> into this state, sell, furnish, administer, or give away, or attempts
> to import into this state or transport any controlled substance
> which is (1) classified in Schedule III, IV, or V . . . shall be
> punished by imprisonment pursuant to subdivision (h) of Section
> 1170 of the Penal Code for a period of two, three, or four years.

Cal. Health & Safety Code § 11379(a).

The INA provides that, "[t]he term 'aggravated felony means . . . illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (As defined in section 924(c) of Title 18). 8 U.S.C. § 1101(a)(43)(B). Generally, to determine whether a conviction constitutes an aggravated felony under the INA, courts employ the "categorical approach." *Taylor v. United States*, 495 U.S. 575, 602 (1990); *Lopez v. Rizo*, 549 U.S. 47 (2005). Under that approach, courts compare the elements of the statute under which the defendant was convicted with those of the "generic" federal definition at issue, *i.e.*, "aggravated felony," to determine whether the conduct proscribed by the statute of conviction has the same elements, is narrower than, or is broader than the "generic" federal definition. *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). Under the categorical approach, if the statute of conviction is broader than the generic federal definition, then it cannot be determined that a conviction under the statute satisfies the federal definition.

In a "narrow range of cases," courts may consider "'a limited number of judicially noticeable documents to determine whether, although the statute of conviction is over-inclusive, the defendant was in fact convicted of a crime that met the definition of' aggravated felony set forth in 8 U.S.C. § 1101(a)(43)(B)." *Sandoval-Lua v. Gonzales*, 499 F.3d 1121, 1129 (9th Cir. 2007) (quoting *Parrilla v. Gonzales*, 414 F.3d 1038, 1042 (9th Cir. 2005)) (overruled on other grounds). This approach, known as the "modified categorical approach," may be applied where the court finds "that the defendant was convicted of violating a divisible statute." *United States v. Acosta-Chavez*, 727 F.3d 903, 907-08 (9th Cir. 2013). A divisible statute is "one that 'sets out one or more elements of the offense in the alternative' or 'comprises multiple, alternative versions of the crime,'" as opposed to alternative means for committing a crime. *Id.* at 908 (quoting *Descamps*, 133 S. Ct. at 2281, 2284). Elements of an offense are facts that a jury must find in order to convict, whereas means of committing an offense are merely "amplifying but legally extraneous circumstances." *Id.* at 2288; *Richardson v. United States*, 526 U.S. 813, 817 (1999). Because a divisible statute "refers to several different crimes, not all of which qualify as . . . predicate[s], a court must determine which crime formed the basis of the defendant's conviction." *Descamps*, 133 S. Ct. at 2284.

    2.  <u>The Categorical Approach</u>

The Government concedes that Cal. Health & Safety Code § 11379(a) includes terms that go beyond the definition of aggravated assault contained in the INA. Thus, the Government acknowledges that Section 11379(a) "is not a categorical aggravated felony drug trafficking offense under 8 U.S.C. § 1101(a)(43)(B)." Dkt. 26, at 7. Indeed, "the conduct made criminal in § 11379(a) includes conduct not made criminal as aggravated felonies by 8 U.S.C. § 1101(a)(43)(B)." *Sandoval-Lua*, 499 F.3d at 1128; *S-Yong v. Holder*, 600 F.3d 1028, 1034 (9th Cir. 2010). For example, Section 11379(a) proscribes transporting controlled substances for personal use, giving away controlled substances and offering to give away controlled

substances. Such conduct is not "illicit trafficking" and would not, therefore, be an aggravated felony under 8 U.S.C. § 1101(a)(43)(B). *United States v. Navidad-Marcos*, 367 F.3d 903, 908 (9th Cir. 2004).

### 3. Whether the Modified Categorical Approach May Be Used

Defendant contends that the modified categorical approach cannot be applied in this case because Section 11379(a) is not divisible. Dkt. 24, at 9. Defendant contends that Section 11379(a) contains alternative means for committing a single offense, rather than alternative elements, effectively creating alternative offenses. Defendant contends that Section 11379(a) contains two sets of "alternatives": (i) it refers to California drug schedules, which "are broader than the federal drug schedules"; and (ii) it "includes offenses that are not 'trafficking,' like transportation for personal use." Dkt. 24, at 11. Defendant contends that, "[i]f the Court considers either of these to be different means, not different elements, it cannot go to the modified categorical approach." *Id*. The Government contends that each of these categories sets forth alternative elements, rather than alternative means, and that the modified categorical approach is, therefore, appropriate. Dkt. 26, at 7.

#### a. California Drug Schedules

Defendant contends that the controlled substances listed in Section 11379(a) are "not different elements, but simply different means of committing the offense." Dkt. 24, at 13. Defendant contends that, "for a defendant to be convicted of violating California drugs statutes . . . the jury need not find[] the precise nature of the controlled substance." *Id.* The Model California Jury Instruction for Section 11379 and for the very similar Section 11352 states, "Every person who [transports,] sells, furnishes, administers, or gives away (controlled substance), a controlled substance, is guilty of a violation of Health and Safety Code section_____, a crime." CALJIC 12.02 (brackets in original).

By placing the term "controlled substance" in parenthesis, the model jury instruction shows that the jury must find the precise nature of the controlled substance in order to convict a defendant. *See United States v. Ramirez-Macias*, No. CR-13-0059, 2013 WL 4723453 (E.D. Wash. Sep. 3, 2013) (citing the model California criminal jury instruction in support of finding that the controlled substances contained in Section 11352 are alternative elements, and proceeding to apply the modified categorical approach); *United States v. Vega-Ortiz*, No. 13-CR-1636, 2013 WL 5816383 (S.D. Cal. Oct. 28, 2013) (similar model jury instruction, placing "controlled substance" in parenthesis, showed that a similar statute -- Cal. Health & Safety Code § 11378 -- listed controlled substances as alternative elements, and proceeding to apply the modified categorical approach).

The cases on which Defendant relies hold only that the controlled substance need not be identified in the charging document; they do not stand for the proposition that the jury does not have to find the specific substance at issue in order to convict. *See* Dkt. 24, at 13-14. Indeed, "[w]hen the underlying statute proscribes more than one act disjunctively, it is common for prosecutors to charge in the *conjunctive*, yet it is well established that, to prove such a charge, a prosecutor need only prove in the *disjunctive* – one version of the crime." *Young v. Holder*, 697 F.3d 976, 986 (9th Cir. 2012); *see also Vega-Ortiz*, 2013 WL 5816383 at *5 ("[E]ven assuming drug type need not be specifically charged . . . it is consequential if it must be proven beyond a reasonable doubt. Therefore, though it references Schedules that are broader than their federal counterparts, the Court finds that § 11378 is 'divisible' and subject to the modified categorical approach.").

For these reasons, the alternative controlled substances set forth in Section 11379(a) are alternative elements, effectively creating alternative offenses.

### b. Prohibited Conduct

Defendant contends that "a jury does not unanimously have to determine whether a defendant sold drugs or transported them for personal use to convict a defendant under § 11379(a)." Dkt. 27, at 10. As result, he argues that these different types of actions constitute "'alternative means of satisfying an element' rather than different elements." *Id.* (citing *Descamps*, 133 S. Ct. at 2297, 2301). However, the first element stated in the California Model Jury Instruction -- "A person (sold, etc.) (controlled substance), a controlled substance" -- requires the jury to find which specific conduct the defendant committed, *i.e.*, transportation, sale, furnishing, administering, or giving away. CALJIC 12.02. The placement of "sold, etc." in parenthesis shows that the jury must find the specific conduct in order to convict a defendant.

Courts have held that similar disjunctive lists set forth alternative elements, rather than alternative means of committing an offense. *Descamps* discussed a hypothetical statute that "criminalizes assault with any of eight specified weapons." 133 S. Ct. at 2290. To determine whether a conviction under that statute necessarily constituted a conviction for "assault with a gun," the Court held, a later court "need only check the charging documents and instructions ('Do they refer to a gun or something else?') to determine whether in convicting a defendant under that divisible statute, the jury necessarily found that he committed" assault with a gun. *Id.* By contrast, had the hypothetical statute not provided a list of specified weapons, although a court could "devise a laundry list of potential 'weapons' . . . the statute itself requires only an indeterminate 'weapon.'" *Id. See also Ramirez-Macias*, 2013 WL 4723453 (Section 11352 is divisible, as alternative forms of proscribed conduct are listed in the disjunctive); *United States v. Flores-Soriano*, No. CR-13-00698, 2013 WL 5217518, at *3 (D. Ariz. Sep. 17, 2013) ("[T]he plain language of [the applicable statute] contains a single subsection listing potential offenses utilizing the disjunctive 'or'."); *Vega-Ortiz*, 2013 WL 5816383, at *4 ("[T]he plain language of the statute suggests a high degree of divisibility.").

In *Ramirez-Chavez v. Holder*, 540 Fed. Appx. 651, 652 (9th Cir. 2013), the Ninth Circuit held that a Nevada law that is similar to Section 11379(a) "is not categorically an aggravated felony [under the INA] because the full range of conduct it criminalizes, including mere possession, is broader than the relevant federal statute." The court continued, "[a]s is the case here, 'when a statute lists multiple, alternative elements, and so effectively creates 'several different … crimes,' we use the modified categorical approach to 'identify, from among several alternatives, the crime of conviction so that the court can compare it to the generic offense.'" *Id.* (citing *Descamps*, 133 S. Ct. at 2285).

For these reasons, the alternative forms of conduct proscribed in Section 11379(a) are alternative elements, rather than alternative means of committing an offense.

### 4. Application of the Modified Categorical Approach

In *Shepard v. United States*, 544 U.S. 13, 16 (2005), the Supreme Court set forth four documents, aside from the statute of conviction, that courts may consider in applying the modified categorical approach: (i) the charging document; (ii) the written plea agreement; (iii) the transcript of the plea colloquy; and (iv) "any explicit factual finding by the trial judge to which the defendant assented." Each of these documents is separately considered.

> a. The Charging Document

Defendant pleaded *nolo contendere* to Count One of the Felony Complaint. Dkt. 24, Exh. B. Count One stated that "the crime of SALE OF A CONTROLLED SUBSTANCE was committed by [Defendant], who did unlawfully transport, import into the State of California, sell, furnish, administer, and give away . . . a controlled substance, to wit, methamphetamine." *Id.* at 2. Thus, Count One expressly states that the controlled substance for which Defendant was convicted was methamphetamine. Count One also expressly states that the conduct for which Defendant was convicted was "sale." Although Count One proceeds to set forth the alternative forms of proscribed conduct in the conjunctive, the first clause, written in all capital letters, states plainly that "the crime of SALE OF A CONTROLED SUBSTANCE was committed by [Defendant]." *Id.* This conclusion is further supported by Count Six of the Felony Complaint, which states that "the crime of TRANSPORTATION OF A CONTROLLED SUBSTANCE, in violation of HEALTH & SAFETY CODE SECTION 11379(a) . . . was committed by [Defendant], who did unlawfully transport methamphetamine." *Id.* at 3. Thus, the Felony Complaint separately charged Defendant with sale and transportation of methamphetamine in different counts.

> b. The Abstract of Judgment

The Abstract of Judgment states that Defendant was convicted of Count One of the Felony Complaint, for "SALE/TRNS OF CNTRL SUBSTANCE." Dkt. 24, Exh. D. This language does not specify whether Defendant was convicted of sale or transportation of a controlled substance. Because transportation may have included transportation for personal use, it would not constitute an aggravated felony. Therefore, this document does not support a determination that Defendant necessarily was convicted of an aggravated felony under the INA.

> c. The Minute Order

The Minute Order issued with respect to the Change of Plea Hearing states that Defendant was convicted of Count One of the Felony Complaint. Dkt. 24, Exh. C. As discussed above, Count One expressly states that Defendant was convicted of sale of methamphetamine, which is an aggravated felony under the INA.

> d. The Plea Colloquy

The parties' primary dispute with respect to the application of the modified categorical approach is whether the plea colloquy establishes that Defendant was convicted of an aggravated felony under the INA. The Government contends that the plea colloquy incorporated the police report as a factual basis for the plea, and that it unequivocally shows that Defendant was convicted of the sale of methamphetamine, which is an aggravated felony under the INA. Dkt. 26, at 14. The Government contends that, "[b]ecause defendant's counsel at the plea colloquy stipulated to the police reports as part of the factual basis, they are properly incorporated as a Shepard document, and this Court may consider them in applying the modified categorical approach." *Id.* Defendant contends that his counsel "did not stipulate to a factual basis that incorporated all the facts listed in the police reports," and therefore the police reports cannot be considered. Dkt. 24, at 18. The relevant portion of the plea colloquy reads:

> The Court: To the charges against you in Count 1, how do you plead?

| | |
|---|---|
| The Defendant: | No Contest. |
| The Court: | Do you understand as far as I am concerned, that's the same as a guilty plea? |
| The Defendant: | Yes. |
| The Court: | Counsel, do you join in the waivers, approve of the plea and stipulate to a factual basis -- |
| Mr. Caillouette: | I do. |
| The Court: | -- Based upon your reading of the police reports? |
| Mr. Caillouette: | Yes. |
| The Court: | I find a knowing, intelligent and voluntary waiver. The plea is accepted. |

Dkt. 24, Exh. E, at 9.

Defendant contends that, although his attorney "indicated in the plea colloquy that he could stipulate to a factual basis because he had read the police reports, he certainly did not stipulate to a factual basis that incorporated all the facts listed in the police reports." Dkt. 24, at 18. Defendant also argues that, because Defendant entered a plea of *nolo contendere*, and "such a plea is not an admission of factual guilt, no factual basis is required to support such a plea, and thus no specific factual basis would be incorporated into it." *Id*. at 20.

A *nolo contendere* plea is "not an admission of factual guilt. . . . It merely allows the defendant so pleading to waive a trial and authorize the court to treat him as if he were guilty." *United States v. Nguyen*, 465 F.3d 1128, 1130 (9th Cir. 2006). "A conviction resulting from a *nolo contendere* plea under these circumstances is not by itself sufficient evidence to prove a defendant committed the underlying crime." *Id*. at 1131. Accordingly, the Ninth Circuit has "not endorsed the proposition that a factual basis is required for a no contest plea." *Loftis v. Almager*, 704 F.3d 645, 649 (9th Cir. 2012). However, a defendant who enters a *nolo contendere* plea may still admit to facts in a plea proceeding. Indeed, if "the record of the plea proceeding reflects that the defendant admitted to facts, a [*nolo contendere*] plea [may] establish the requisite factual predicate . . ." *United States v. Vidal*, 504 F.3d 1072, 1089 (9th Cir. 2007); *Hernandez-Cruz v. Holder*, 651 F.3d 1094 (9th Cir. 2011) (applying the modified categorical framework, and considering facts in the stipulated factual basis for a plea of *nolo contendere*).

To incorporate a non-Shepard document, such as a police report, into the analysis under the modified categorical approach, the document must be "expressly stipulated [to] by both sides." *United States v. Hernandez-Hernandez*, 431 F.3d 1212, 1218 (9th Cir. 2005); *United States v. Almazan-Becerra*, 537 F.3d 1094, 1096 (9th Cir. 2008) (incorporating a police report where counsel for defendant "stipulated that 'the police reports and other documents within the Court file contain a factual basis for the pleas'"); *Parrilla*, 414 F.3d at 1044 ("[B]y explicitly incorporating [a document] into his guilty plea, [the defendant] in context admitted the facts in [that document] and rendered it judicially noticeable for the purpose of applying the modified categorical approach.").

In the plea proceedings that were conducted in the Superior Court, counsel for Defendant expressly stipulated that the police reports provided a factual basis for the plea. Defendant contends that the transcript is ambiguous with respect to this issue. Dkt. 24, at 18.  However, similar stipulations have been accepted by the Ninth Circuit, and California Courts of Appeal. *See Hernandez-Cruz*, 651 F.3d at 1097-98 (defendant stipulated to police report as a factual basis for a plea of no contest where "his attorney agreed to 'stipulate to a factual basis based on the police report'"); *United States v. Espinoza-Cano*, 456 F.3d 1126, 1132 n.5 (9th Cir. 2006) (defendant stipulated to police report as a factual basis for guilty plea where his attorney answered in the affirmative to the question of the court whether counsel will "stipulate there is a factual basis for the plea entered by each of their clients based upon police reports contained in the Court's file."); *People v. Wilkerson*, 6 Cal. App.4th 1571, 1577 (1992) (defendant stipulated to police report as factual basis for his nolo contendere plea where "the trial court asked whether counsel would stipulate that a factual basis for the plea existed," and defense counsel answered, "'[s]o stipulated, your Honor, based on the police reports included in the complaint'").

Further, although a factual basis for a *nolo contendere* plea is not required under the Constitution, under California law, "when taking a conditional plea of guilty or nolo contendere . . . to an accusatory pleading charging a felony, a trial court is required by [Cal. Penal Code § 1192.5] to 'cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for the plea.'" *People v. Holmes*, 32 Cal. 4th 432, 435 (2004). The transcript of the plea proceeding in the Superior Court at issue here reflects an appropriate inquiry by the judge, pursuant to Cal. Penal Code § 1192.5, to ensure that there was a factual basis for the plea. As the California Supreme Court stated in *Holmes*, "[i]f the trial court inquires of defense counsel regarding the factual basis, counsel may stipulate to a particular document that provides an adequate factual basis, such as a . . . police report." 32 Cal.4th at 442. Although defense counsel was not required to stipulate that the police report contained a factual basis for the *nolo contendere* plea, by answering affirmatively to the inquiry of the court, he made such a stipulation. *Hernandez-Hernandez*, 431 F.3d 1212, 1219 (9th Cir. 2005) ("defense counsel expressly stipulated to the factual basis of the plea and that is sufficient to constitute 'findings of fact adopted by the defendant'") (citing *Shepard*, 544 U.S. at 21).

The police report unequivocally establishes that Defendant was convicted of the sale of methamphetamine. Dkt. 26-1, Exh. A. The report describes a sale of approximately $20 worth of methamphetamine to a government informant. *Id*. at 7-8. The report states that police officers gave the informant a marked $10 and $20 bill to purchase narcotics. It states that the informant asked a third party, Mary Cadena, to sell him $20 worth of methamphetamine. *Id*. at 7. It states that, approximately five minutes later, Defendant drove up to the informant and Cadena, Cadena leaned inside the vehicle, and then walked back to the informant and handed the informant a plastic bindle with an off-white substance. *Id*. The officers then picked up the informant, inspected the substance, and thought that it was methamphetamine. *Id*. The officers then arrested Defendant and conducted a search incident to arrest and found the marked bills in his wallet. *Id*. at 8. The officers also conducted a search of the vehicle that Defendant had been driving, and found a water cooler that they believed to be altered. *Id*. They opened the water cooler and "found 21 individually wrapped black tar substances which [the officer] believed to be heroin and 8 individually wrapped substances which [the] officer believed to be methamphetamine." *Id*.

Defendant contends that the police report does not unequivocally establish that Defendant was convicted of the sale of methamphetamine because the report describes "both a possible methamphetamine sales offense . . . *and* a possible transportation of methamphetamine for

personal use offense." Dkt. 27, at 8. Specifically, Defendant contends that the small amount of methamphetamine found in the water cooler "could certainly have been interpreted to be for personal use." *Id*. at 9. This argument is not persuasive. The police report describes a hand-to-hand sale of methamphetamine. The end of the report states that, after Defendant had already been arrested in connection with that sale, officers identified a small number of individually wrapped bags of methamphetamine. Those bags were found in the car from which Defendant had sold a similar individually wrapped bag containing a small quantity of methamphetamine. When read as a whole, the report is necessarily interpreted as describing only the sale of methamphetamine, not its transportation for personal use. *Almazan-Becerra*, 537 F.3d at 1099 n.2 ("[Defendant] contends that the police reports also describe the offense of transporting marijuana for personal use because the reports state that the police found a bindle of marijuana on the ground where [defendant] had been walking. We reject this contention because the reports, when read as a whole, describe only one type of offense – selling marijuana. The bindle found on the ground was simply one of several pieces of evidence of that offense.").

        \*        \*        \*

The charging document and the police report, to which Defendant expressly stipulated during the plea colloquy, unequivocally establish that Defendant necessarily was convicted of the sale of methamphetamine. *Li v. Ashcroft*, 389 F.3d 892, 896 (9th Cir. 2004); *Vidal*, 504 F.3d at 1086. The sale of methamphetamine is a drug trafficking crime and an aggravated felony under the INA. 8 U.S.C. § 1101(a)(43)(B). As noted, Defendant concedes that his 2004 "conviction would have barred him from eligibility for [voluntary departure] had it been an aggravated felony." Dkt. 24, at 22. Because Defendant was convicted of an aggravated felony, he was not eligible for voluntary departure. Therefore, the deportation order issued in 2007 and reinstated in 2011 was valid.

## IV.    Conclusion

For the reasons set forth above, the Motion is DENIED. The Final Pretrial Conference is continued to March 27, 2014 at 8:30 a.m. and the Jury Trial remains set for April 1, 2014 at 9:00 a.m. All pretrial documents shall be filed by 12:00 pm on March 26, 2014. Should an excludable time stipulation be necessary, such shall be filed no later than 12:00 pm on March 26, 2014.

**IT IS SO ORDERED.**

                                          :

Initials of Deputy Clerk:  ak